State of Nebraska ex rel. Counsel for Discipline
of the Nebraska Supreme Court, relator, v.
Bradley A. Boyum, respondent.

___ N.W.2d ___

Filed August 28, 2015.    No. S-14-578.

Original action. Judgment of suspension.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ.

Per Curiam.

## INTRODUCTION

On February 4, 2015, amended formal charges containing one count were filed by the office of the Counsel for Discipline of the Nebraska Supreme Court, relator, against respondent, Bradley A. Boyum. Respondent filed an answer to the amended formal charges on February 9. A referee was appointed, and the referee held a hearing on the charges. Respondent and a client of respondent appeared at the hearing and testified, and exhibits were admitted into evidence.

The referee filed a report on May 13, 2015. With respect to the amended formal charges, the referee concluded that respondent's conduct had violated Neb. Ct. R. of Prof. Cond. §§ 3-501.3 (diligence), 3-501.4(a)(3) (communications), and 3-508.4 (misconduct). The referee further found that respondent had violated his oath of office as an attorney licensed to practice law in the State of Nebraska. See Neb. Rev. Stat. § 7-104 (Reissue 2012). With respect to the discipline to be imposed, the referee recommended a 60-day suspension, and

as a condition of reinstatement, that respondent complete 6 hours of legal education in the area of professional responsibility, and that upon reinstatement, if accepted, respondent be placed on monitored probation for a period of 2 years. Neither relator nor respondent filed exceptions to the referee's report. Relator filed a motion for judgment on the pleadings under Neb. Ct. R. § 3-310(L) (rev. 2014) of the disciplinary rules. We grant the motion for judgment on the pleadings as to the facts and impose discipline as indicated below.

STATEMENT OF FACTS

Respondent was admitted to the practice of law in the State of Nebraska on September 21, 2004. At all times relevant to these proceedings, he was engaged in the practice of law in Omaha, Nebraska.

On June 30, 2014, relator filed formal charges against respondent, and on February 4, 2015, relator filed amended formal charges against respondent. The amended formal charges contained one count generally regarding respondent's failure to communicate with a client and respondent's failure to perform the legal work for the client for which respondent had been paid. The formal charges alleged that by his conduct, respondent violated his oath of office as an attorney and §§ 3-501.3, 3-501.4(a)(3) and (4), and 3-508.4(a) and (d). On February 9, 2015, respondent filed his answer to the amended formal charges, generally denying the allegations set forth in the amended formal charges.

A referee was appointed on October 24, 2014, and the referee held a hearing on the amended formal charges. Respondent and the client testified at the hearing, and exhibits were admitted into evidence.

After the hearing, the referee filed his report and recommendation on May 13, 2015. The substance of the referee's findings may be summarized as follows: Respondent first met the client in December 2011, and on February 26, 2012, the client emailed respondent to schedule a meeting "'to start our estate process.'" The initial estate planning meeting occurred

on March 2 and lasted approximately 1 hour. At the end of the meeting, respondent gave the client a folder containing an asset information booklet.

No followup meeting was scheduled. At the hearing, the client was asked whether he told respondent how quickly he wanted to proceed, and the client stated, "'Quite the opposite. I told him I was not in a hurry.'" Respondent testified that he believed the client would contact him when the client was ready to take the next step. There were no additional contacts between respondent and the client in 2012.

On January 16, 2013, the client called respondent to discuss an unrelated matter, and at that time, respondent brought up the topic of estate planning. Respondent's notes from the January 16 telephone call stated that "'[the client] is still working on the asset booklet but they are planning on doing the Living Trust packet.'" Respondent's notes further stated that respondent "'[d]id [an] estate plan draft,'" and respondent testified at the hearing that that meant he had "'entered information into a drafting program.'"

On January 28, 2013, respondent created a document titled the client's "**Estate Plan Drafting Notes**" (emphasis in original), and according to these notes, respondent "'[d]rafted Estate Plan for [the client] after our conversation from January 16, 2013 because he said he was going forward with the Living Trust packet.'" Respondent testified at the hearing that he did not intend to show the original draft of the estate plan to the client. Respondent's notes listed some of the information that respondent still needed to gather in order to complete the estate plan for the client.

Respondent took no steps between January 28 and June 17, 2013, to gather the missing information for the estate plan. Respondent testified at the hearing that he took no action at this time, because the client "'wanted to control the speed of the process, the estate planning process.'" The client testified at the hearing that he did not remember whether he wanted to move forward with the estate planning process in January 2013.

The client initiated a meeting with respondent for estate planning purposes, and that meeting was held on June 17, 2013. At that meeting, the client formally told respondent that he wanted to go forward with the estate planning process. The client paid respondent a retainer of $1,700, and the client signed a legal services agreement. The legal services agreement provided that respondent "'will prepare the following estate planning documents for client: [six documents are identified],'" and it further provided that the client agreed that "'Attorney's Fees shall be paid as follows: Initial Retainer of $1700.'" The legal services agreement set forth the client's responsibilities, including: "'Before Law Firm has an obligation to perform any services for Client, Client must sign this agreement and make the payment required in paragraph 3 above.'" The client and his wife both signed the contract. The legal services agreement did not explicitly set forth other details of how and when the work was to be performed.

Respondent contended that at the conclusion of the June 17, 2013, meeting, he did not have all of the information he needed to complete the work identified in the legal services agreement. The referee noted in his report that at the hearing, respondent "was unable to describe what additional information he needed" and that respondent "became clearly evasive about what information he may have needed to complete work on the estate plan." Respondent did not inform the client that respondent might need additional information from the client and that respondent might be contacting the client to obtain additional information.

At the end of the June 17, 2013, meeting, the client's understanding was that he would receive a draft of the estate plan from respondent and that he would be able to review the draft before the plan was finalized. The client was unaware that respondent did not intend to send a draft of the estate plan to the client. The referee stated in his report that he found that the client had "expressed desire to receive a draft to review at the June 17, 2013 meeting."

The referee stated in his report that the schedule to complete the estate planning work was left open. The referee further stated that respondent asserted that the arrangement was for the client to contact respondent when he needed some work completed. Conversely, the client expected respondent to call him sometime after the meeting on June 17, 2013, to inform the client when the documents were ready to be reviewed.

On August 19, 2013, the client called respondent and left a message. Respondent returned the call and left a message. On September 9, the client called respondent "'to get this estate process going.'" Respondent did not answer, and the client left a message. Late on September 9, respondent sent the client an e-mail stating, "'I saw I missed your call. I will call you in the morning.'" Respondent called the client at 6:22 p.m. on September 10. The client answered the call, but he indicated that it was not a convenient time to talk. The client stated that he would call respondent back, but he did not.

Beginning on January 21, 2014, the client attempted numerous times to contact respondent to let respondent know he was ready and wanting to move forward. The client attempted to contact respondent via: a call on January 21, a call on January 27, two calls on February 4, an e-mail on February 4, two calls on February 6, a call on February 18, a call on February 20, and three calls on February 25. Respondent did not respond to any of the client's attempts to contact him.

On February 25, 2014, the client called relator because he was upset that he could not reach respondent. The client wrote a grievance letter, which relator received on February 27. On March 4, relator sent respondent a letter with a copy of the grievance. The March 4 letter was mailed certified, return receipt, and addressed to respondent's correct office address. The referee noted in his report that return receipt has never been returned, and the letter itself has never been returned. Respondent testified at the hearing that he did not receive the

March 4 letter. An exhibit received at the hearing showed a copy of a U.S. Postal Service tracking screen which showed that the March 4 letter was delivered on March 5 to area code 68154, although not the specific address or addresses.

On April 2, 2014, the client was in respondent's office building on an unrelated matter, and the client asked respondent to meet with him. Respondent met the client, and the client indicated that "it was time for them to part" and asked for his money back. Respondent immediately wrote the client a check for the entire $1,700 retainer.

With respect to relator's efforts to reach respondent, on April 15, 2014, relator sent a followup letter by regular mail to respondent's correct address. The letter was never returned to relator. Respondent testified that he did not receive the April 15 letter.

Relator sent respondent a third letter to respondent's correct address on May 8, 2014, and respondent acknowledged receiving this letter. Respondent e-mailed a response to relator on May 19. Thereafter, relator filed a complaint with the appropriate Committee on Inquiry and subsequently filed formal charges against respondent as described above.

The referee stated in his report that two additional grievance letters were submitted against respondent. With respect to the second grievance letter, two of respondent's clients asserted that respondent failed to communicate with them and failed to return their estate planning documents. The referee noted that respondent apparently did not respond promptly to relator regarding the second grievance; however, respondent eventually sent a letter to relator regarding the grievance in which he denied receiving some of the calls claimed to have been made by the clients and stated that "'[t]he fact of the matter is that I handled the matter poorly. It is my fault for not being proactive in my attempt to contact them as time passed.'" The second grievance did not result in the filing of a complaint or the filing of formal charges against respondent.

With respect to the third grievance submitted against respondent, two of respondent's clients asserted that respondent failed to complete work for which the clients had paid. Relator sent five letters to respondent regarding the third grievance between August and December 2013, and respondent did not respond to any of relator's five letters. Relator called respondent on December 12, and on December 13, respondent mailed a written response to relator regarding the third grievance. Relator subsequently filed a complaint, and on February 20, 2014, the Committee on Inquiry issued a private reprimand to respondent. The referee noted in his report that the allegations supporting the private reprimand were that respondent violated §§ 3-501.3, 3-501.4(a)(3) and (4), and 3-508.4(a) and (d).

In his report, the referee determined with respect to the allegations set forth in the amended formal charges, based on his actions, respondent did not act promptly or diligently, that respondent did not keep the client reasonably informed about the status of the matter, and that respondent failed to cooperate with relator in a timely manner. Accordingly, the referee found that respondent violated his oath of office as an attorney and professional conduct rules §§ 3-501.3, 3-501.4(a)(3), and 3-508.4. However, the referee found that respondent did not violate § 3-501.4(a)(4) of the professional conduct rules.

The referee identified certain aggravating factors, including that two other grievances had been submitted against respondent that involved similar misconduct. In both situations, respondent failed to adequately communicate with his clients as to the status of their matters and respondent failed to promptly respond to the investigation of relator. The referee further stated that one of the other grievances resulted in a private reprimand, and a prior reprimand is considered an aggravating factor.

The referee also identified certain mitigating factors. The referee noted that the client involved in the events at issue

in this case was a "difficult" client who provided confusing direction regarding when work was to be done, but the referee stated "[t]his fact is barely mitigating since the exact same fact provides notice to [respondent] that extra care was needed to ensure adequate communication." The referee acknowledged that many letters of support were submitted on respondent's behalf. However, the referee stated that some of the letters were "templates which have merely been signed," and the referee did not give the form letters any mitigating weight. The referee further stated that other letters appeared to be sincere, original compositions and that those letters were entitled to some mitigating weight. The referee further stated that "[a]s a matter of proportionality, [respondent's] failure to respond to the investigation into his misconduct was a clear violation but was not profoundly significant. . . . I find that [respondent] violated the rule but I do not exaggerate the seriousness of this particular violation."

With respect to sanctions to be imposed for the foregoing actions, considering the aggravating and mitigating factors, the referee recommended that respondent be suspended for a period of 60 days; that reinstatement be conditioned on respondent's proof that respondent completed 6 hours of continuing legal education prior to reinstatement; and that upon reinstatement, respondent be placed on monitored probation for a period of 2 years.

## ANALYSIS

In view of the fact that neither party filed written exceptions to the referee's report, relator filed a motion for judgment on the pleadings under § 3-310(L). When no exceptions to the referee's findings of fact are filed, the Nebraska Supreme Court may consider the referee's findings final and conclusive. *State ex rel. Counsel for Dis. v. Council*, 289 Neb. 33, 853 N.W.2d 844 (2014). Based upon the findings in the referee's report, which we consider to be final and conclusive, we conclude that the amended formal charges are supported

by clear and convincing evidence, and the motion for judgment on the pleadings as to the facts is granted.

A proceeding to discipline an attorney is a trial de novo on the record. *State ex rel. Counsel for Dis. v. Thebarge*, 289 Neb. 356, 854 N.W.2d 914 (2014). Violation of a disciplinary rule concerning the practice of law is a ground for discipline, and disciplinary charges against an attorney must be established by clear and convincing evidence. *State ex rel. Counsel for Dis. v. Sundvold*, 287 Neb. 818, 844 N.W.2d 771 (2014).

Based on the record and the undisputed findings of the referee, we find that the above-referenced facts have been established by clear and convincing evidence. Based on the foregoing evidence, we conclude that by virtue of respondent's conduct, respondent has violated §§ 3-501.3, 3-501.4(a)(3), and 3-508.4 of the professional conduct rules. The record also supports a finding by clear and convincing evidence that respondent violated his oath of office as an attorney, and we find that respondent has violated said oath.

We have stated that the basic issues in a disciplinary proceeding against an attorney are whether discipline should be imposed and, if so, the appropriate discipline under the circumstances. See *State ex rel. Counsel for Dis. v. Council, supra*. Neb. Ct. R. § 3-304 of the disciplinary rules provides that the following may be considered as discipline for attorney misconduct:

(A) Misconduct shall be grounds for:

(1) Disbarment by the Court; or

(2) Suspension by the Court; or

(3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or

(4) Censure and reprimand by the Court; or

(5) Temporary suspension by the Court; or

(6) Private reprimand by the Committee on Inquiry or Disciplinary Review Board.

(B) The Court may, in its discretion, impose one or more of the disciplinary sanctions set forth above.

See, also, § 3-310(N).

With respect to the imposition of attorney discipline in an individual case, each attorney discipline case must be evaluated in light of its particular facts and circumstances. *State ex rel. Counsel for Dis. v. Council, supra*. For purposes of determining the proper discipline of an attorney, we consider the attorney's actions both underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors. *Id*.

To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Connor*, 289 Neb. 660, 856 N.W.2d 570 (2014).

The evidence in the present case establishes, among other facts, that respondent agreed to prepare estate planning documents for the client and was paid a retainer to complete such work. However, respondent failed to prepare the documents and failed to effectively communicate with the client regarding the status of the work to be completed. In addition, respondent repeatedly failed to cooperate with relator's investigation.

As aggravating factors, we note, as did the referee, that two other grievances had been submitted against respondent for similar misconduct and that in those situations, respondent similarly failed to cooperate with relator's investigation in a timely manner. Further, the record shows that respondent has received a private reprimand.

As mitigating factors, we acknowledge, as did the referee, that the client involved with the events at issue in this case was

a "difficult" client. We also recognize that several letters of support were written on respondent's behalf.

We have considered the record, the findings which have been established by clear and convincing evidence, and the applicable law. Upon due consideration, the court finds that respondent should be suspended for a period of 60 days. Before the filing of an application for reinstatement, respondent must complete 6 hours of legal education in the area of professional responsibility. Should respondent apply for reinstatement, his reinstatement shall be conditioned upon the application's being accompanied by a proposed monitored plan and further conditioned on respondent's being placed on monitored probation for a period of 2 years, and the monitoring shall be by an attorney licensed to practice law in the State of Nebraska, who shall be approved by the Counsel for Discipline. Respondent shall submit a monitoring plan with this application for reinstatement which shall include, but not be limited to, the following: During the first 6 months of the probation, respondent will meet with and provide the monitor a weekly list of cases for which respondent is currently responsible, which list shall include the date the attorney-client relationship began; the general type of case; the date of last contact with the client; the last type and date of work completed on the file (pleading, correspondence, document preparation, discovery, or court hearing); the next type of work and date that work should be completed on the case; any applicable statutes of limitations and their dates; and the financial terms of the relationship (hourly, contingency, et cetera). After the first 6 months through the end of probation, respondent shall meet with the monitor on a monthly basis and provide the monitor with a list containing the same information as set forth above; respondent shall reconcile his trust account within 10 days of receipt of the monthly bank statement and provide the monitor with a copy within 5 days; and respondent shall submit a quarterly compliance report with the Counsel for Discipline, demonstrating that respondent is

adhering to the foregoing terms of probation. The quarterly report shall include a certification by the monitor that the monitor has reviewed the report and that respondent continues to abide by the terms of the probation.

## CONCLUSION

The motion for judgment on the pleadings is granted as to the facts. With respect to discipline, it is the judgment of this court that respondent should be and is hereby suspended from the practice of law for a period of 60 days, effective immediately, after which period respondent may apply for reinstatement to the bar. Before the filing of an application for reinstatement, respondent must complete 6 hours of legal education in the area of professional responsibility. Should respondent apply for reinstatement, his reinstatement shall be conditioned upon respondent's being on probation for a period of 2 years, including monitoring, following reinstatement, subject to the terms outlined above, and acceptance of an application for reinstatement is conditioned on the application's being accompanied by a proposed monitored probation plan the terms of which are consistent with this opinion. Respondent shall comply with Neb. Ct. R. § 3-316 (rev. 2014), and upon failure to do so, respondent shall be subject to punishment for contempt of this court. Respondent is also directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012) and § 3-310(P) and Neb. Ct. R. § 3-323(B) of the disciplinary rules within 60 days after an order imposing costs and expenses, if any, is entered by the court.

JUDGMENT OF SUSPENSION.