Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/03/2017 09:08 AM CST

STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, RELATOR,
v. LORI ANNE UBBINGA, RESPONDENT.
___ N.W.2d ___

Filed March 3, 2017.    No. S-16-373.

Original action. Judgment of suspension.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

No appearance for respondent.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

PER CURIAM.

## INTRODUCTION

On April 11, 2016, formal charges containing one count were filed by the office of the Counsel for Discipline of the Nebraska Supreme Court, relator, against Lori Anne Ubbinga, respondent. Respondent filed an answer to the formal charges on July 5. A referee was appointed, and the referee held a hearing on the charges. Respondent did not appear at the hearing.

The referee filed a report on December 2, 2016. With respect to the formal charges, the referee concluded that respondent's conduct had violated the following provisions of the Nebraska Rules of Professional Conduct: Neb. Ct. R. of Prof. Cond. §§ 3-501.1 (competence); 3-501.3 (diligence); 3-501.4(a) and (b) (communications); 3-501.15(d)

- 996 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. UBBINGA
Cite as 295 Neb. 995

(safekeeping property); 3-501.16(d) (declining or terminating representation); 3-508.1(a) and (b) (bar admission and disciplinary matters); and 3-508.4(a), (c), and (d) (misconduct). The referee further found that respondent had violated her oath of office as an attorney licensed to practice law in the State of Nebraska. See Neb. Rev. Stat. § 7-104 (Reissue 2012). With respect to the discipline to be imposed, the referee recommended a 1-year suspension and that upon reinstatement, if applied for and accepted, respondent be placed on monitored probation for a period of 2 years. Neither relator nor respondent filed exceptions to the referee's report. Relator filed a motion for judgment on the pleadings under Neb. Ct. R. § 3-310(L) (rev. 2014) of the disciplinary rules. We grant the motion for judgment on the pleadings and impose discipline as indicated below.

## STATEMENT OF FACTS

Respondent was admitted to the practice of law in the State of Nebraska on September 20, 2001. At all times relevant to these proceedings, she was engaged in the practice of law in Homer, Nebraska.

On April 11, 2016, relator filed formal charges against respondent. The formal charges contain one count generally regarding respondent's failure to communicate with a client and respondent's failure to perform the legal work for the client for which respondent had been paid. The formal charges alleged that by her conduct, respondent violated her oath of office as an attorney and professional conduct rules §§ 3-501.1; 3-501.3; 3-501.4(a) and (b); 3-501.15(d); 3-501.16(d); 3-508.1(a) and (b); and 3-508.4(a), (c), and (d).

Because respondent failed to file an answer or other pleading within 30 days of being served with summons and a copy of the formal charges, relator filed a motion for judgment on the pleadings on June 22, 2016. On June 30, respondent sent an email to relator in which she requested additional time to respond to the motion and formal charges. Relator responded,

- 997 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. UBBINGA
Cite as 295 Neb. 995

stating that it would not object to respondent's filing her answer out of time, so long as it was filed by July 5. On July 5, respondent filed a motion for extension of time to respond, which this court sustained, and, accordingly, her answer was filed. In her answer to the formal charges, respondent admitted some of the factual allegations and denied others. She denied the violations alleged in the formal charges.

A referee was appointed on August 5, 2016. On August 25, relator sent a letter to respondent asking to schedule a time to take her deposition. Respondent did not respond. On August 29, relator left a voicemail message asking respondent to call.

On August 30, 2016, a prehearing conference was held by telephone with the referee, respondent, and relator. A progression schedule was established, whereby discovery was to be completed by October 7 and a hearing was set for October 25.

On September 8, 2016, relator sent an email to respondent asking her to advise relator when she would be available for her deposition. Respondent did not reply. On September 12, relator left a voicemail message for respondent and sent an email to respondent stating that relator had scheduled her deposition for September 22. Respondent did not respond to the email. Relator placed a followup call to respondent on September 15 and left a voicemail message.

Because respondent had failed to respond to relator's emails and voicemail messages, relator had the sheriff personally serve a subpoena duces tecum on respondent, which changed the date of respondent's deposition to September 29, 2016. On September 26, respondent contacted relator and requested that the date of the deposition be rescheduled because she had a funeral to attend on September 29. Relator rescheduled the deposition for October 4, and respondent's deposition was taken on October 4.

On October 5, 2016, relator and respondent exchanged emails regarding witnesses, exhibits, and a stipulation of facts. Relator sent a proposed stipulation of facts for respondent's

- 998 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. UBBINGA
Cite as 295 Neb. 995

review and consideration. Respondent did not respond to relator's proposed stipulation of facts. Respondent sent an email in which she asked relator if she could send her witness and exhibit lists at a later date. Respondent did not provide relator or the referee with respondent's list of witnesses or exhibits before the hearing.

According to the referee's report, on October 25, 2016, at approximately 6:10 a.m., respondent left a voicemail message with the referee stating that she was ill and would not be able to attend the hearing on the formal charges scheduled for that day. Respondent stated that relator "'could put on what he needs to put on and that maybe I could submit something in writing in maybe a week or so.'" Respondent further stated that the referee could call her. She did not request a continuance of the hearing.

At approximately 7:35 a.m., respondent left a voicemail message with relator indicating that she was ill and would not be attending the hearing. According to the referee's report, respondent stated in the message that she would like a continuance "but understood that [relator] was ready to proceed with the hearing and she did not want to interfere with that so she said go ahead and make your record." She further stated that she would request permission to submit something in writing to the referee on a later date. Respondent did not submit any such writing to the referee.

At approximately 8 a.m., the referee called relator and communicated the content of respondent's voicemail. Relator stated that he wanted to proceed with the hearing, and the referee advised relator that he would allow relator to make his request as to how he wanted to proceed on the record.

At approximately 10 a.m., relator appeared at the hearing with his witness. Respondent did not appear. Relator stated on the record that he wished to proceed with the hearing, to offer exhibits, and to have his witness testify. Relator stated that he would not object if respondent submitted something in writing later.

- 999 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. UBBINGA
Cite as 295 Neb. 995

At approximately 10:10 a.m., before allowing relator to put on evidence, the referee called respondent and left a voicemail message asking her to call him. Respondent did not return the referee's call. Thereafter, relator called respondent, but she did not answer. The referee stated that he would proceed with the hearing on the formal charges. The hearing was held at approximately 10:30 a.m. on October 25, 2016. Respondent did not appear. At the hearing, relator offered and the referee received 32 exhibits, and relator called one witness, respondent's client, to testify.

After the hearing was completed, relator rested its case "[s]ubject to whatever [respondent] does." The referee did not close the record and stated that as a matter of due process, he wanted to give respondent some opportunity to review the record, appear, and testify.

On October 26, 2016, the referee filed a posthearing order which he emailed to respondent and relator. The order stated in part that copies of the transcript and exhibits received at the hearing were being sent to respondent and that respondent would have 10 days to review them. The order further stated that at the end of the 10 days, the referee would contact the parties to schedule a date, time, and place for respondent to appear and present evidence.

On November 4, 2016, the referee mailed and emailed to the parties copies of the transcript and exhibits which had been received at the hearing. The referee advised that he would contact the parties on November 14 to schedule a time and place for respondent to present evidence. On November 14 at approximately 9 a.m., the referee called respondent at her home and cell phone numbers. No one answered his call at respondent's home number; no answering machine picked up. The referee left a voicemail message on the cell phone number asking respondent to call back. Respondent did not return the referee's call. At approximately 9:30 a.m., the referee called respondent's cell phone and left another message. At approximately 9:35 a.m., the referee called relator and advised him

- 1000 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. UBBINGA
Cite as 295 Neb. 995

that respondent had not returned the referee's calls. Relator then made a motion for the referee to close the record of the hearing on the formal charges. The referee sustained relator's motion. The relator then set a schedule for the parties' briefing. Relator submitted a brief, but respondent did not.

On December 2, 2016, the referee filed his report and recommendation. The substance of the referee's findings may be summarized as follows: In December 2014, a client hired respondent to represent him in a child visitation case. The client had been represented at trial by a different lawyer. After the trial, the court filed a decree on December 22, awarding sole custody of the three minor children to the children's mother. The client was granted supervised visitation during the first 3 months following the decree to begin with supervised visitation every other weekend from noon to 5 p.m. on Saturday and noon to 5 p.m. on Sunday. The client was also granted supervised visitation each Wednesday from 5 to 7 p.m. Supervision was to be provided by the children's mother, the children's maternal grandmother, or any other third person agreed to by the parties. At the client's sole discretion and cost, such supervision could be provided by a neutral third-party agency.

The client contacted respondent regarding the decree and the visitation ordered by the court. Respondent and the client agreed they would not appeal from the decree.

The dispute between the client and the children's mother was over the supervised visitation of the children. The client insisted upon exercising his visitation in his home with a neutral third-party agency, and the children's mother would not agree.

At the hearing on the formal charges, the client testified that he hired respondent to help him with his visitation issue. The client expected that respondent would talk to the attorney for the children's mother in order to facilitate visitation and to obtain contact information so the client could talk to his children. The client further testified that he told respondent that

if visitation could not be quickly resolved, he wanted respondent to file a contempt motion against the children's mother. The client testified that respondent was willing to file such a contempt motion.

In his report, the referee noted that the client's testimony as to the amount he paid respondent is not consistent with Facebook messages between the client and respondent, in which the client stated to respondent: "'Well I gave you 1200 total and you sent 4 e-mails so I believe you earned the 200, but I think its fare [sic] to say I deserve $1,000 back.'"

With respect to attorney fees, the client testified that he made an initial payment of $500 cash to respondent, and in January 2015, he gave respondent a $1,000 check. It was the client's understanding that it would only cost him $1,500 for respondent to represent him in the visitation matter and for some unrelated matters.

In contrast, respondent testified that the client first contacted her in November 2014, that he had contacted her multiple times via Facebook, and that she informed him that he needed to pay her some attorney fees. Respondent testified their first meeting in person was in December 2014, and she quoted him a fee of $2,500 for representing him in various matters. She testified that although the original agreement was for $2,500, the client paid her only $1,000. Respondent also testified that the client paid her $200 as a filing fee for another case, but that she did not file anything.

With respect to representation, the client testified that respondent represented him from January to May 2015. The referee found that on January 8, 2015, the client sent a Facebook message to respondent stating that he wanted to exercise his visitation because it had been a year since he had seen his children. On January 9, the client met with respondent and paid her $200. The client asked that respondent assist him in arranging for his visitation through the attorney for the mother's children, and respondent stated she would email the attorney to make the arrangements. The client testified that

he asked respondent several times to file a contempt motion against the children's mother, but that respondent did not do so.

Because the client did not hear from respondent, on January 12, 2015, he sent respondent two messages asking if she had heard from the other attorney. On January 13, respondent sent the client a message stating she would call the other attorney again that morning. The client asked respondent if he could file a contempt motion if the other attorney did not respond, and respondent replied that she would file an appearance in the case and that a contempt motion could be filed.

On February 6, 2015, respondent spoke by telephone with the attorney for the children's mother regarding the client's visitation with the children. Respondent suggested that visitation begin on February 14, but no agreement was reached during that call. On February 9, the other attorney sent respondent an email informing her that visitation on February 14 would not work, and instead proposed that visitation occur on February 21 if the client would agree that the children's maternal grandmother would supervise the visit at her house. The attorney asked respondent to let him know if respondent's client would agree to this visitation. Respondent did not respond to the other attorney until February 20.

The client did not want to exercise visitation at the maternal grandmother's house, so he asked respondent to help make arrangements for a third party to supervise the visit at his house. By February 20, 2015, respondent was unable to make these arrangements for the client's supervision on February 21. On February 20 at 2:44 p.m., respondent sent an email to the other attorney stating that the client would exercise his visitation at his house with a third-party counselor, even though she had been unable to make arrangements for a third party to supervise the visit. At 4:41 p.m., the other attorney responded, stating that visitation could not be arranged on such short notice and that because he had not heard from respondent in answer to his February 9 email, he assumed the client did not

- 1003 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
295 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. UBBINGA
Cite as 295 Neb. 995

want to exercise visitation on February 21. The other attorney reiterated the children's mother's position that the first visitation should occur at the children's mother's house. He also asked for 1 week's notice for future visitations.

On February 23, 2015, the client sent a message to respondent asking about his visitation. Respondent replied that she had sent an email to the other attorney on February 20, but she did not receive a response. Respondent stated she would forward the email to the client that evening, but the client did not get a copy of the email. The client responded that if the children's mother denied his visitation, he wanted to file a motion for contempt.

On February 24, 2015, the client sent respondent two Facebook messages asking about the February 20 email respondent sent to the other attorney and about future visitation. On February 25, respondent sent the client a message stating that the other attorney had not responded to her email and that she would forward her February 20 email to him later that day. She did not forward the email to the client. The client stated that he believed they should file a contempt motion. On February 26, respondent emailed the client implying that she had not received a response from the other attorney regarding her February 20 email. Respondent told the client that she would send another request to the other attorney and that if she did not receive a response, she would file a motion for contempt. The referee stated in his report that respondent's statements that she did not receive a response from the other attorney regarding her February 20 email were false and that respondent knew they were false when she made them.

At no time between February 20 and 26, 2015, did respondent seek to arrange for the client's visitation for February 28. On February 26, respondent sent an email to the other attorney "complaining that it was his fault that [the client] did not have visitation on February 14 or February 21." She stated that the client would exercise visitation on March 7

at his house with a third-party supervisor. Respondent sent a copy of this email to the client. On February 26, the other attorney responded and reiterated the children's mother's position that the initial visitation must be in a familiar environment supervised by a person the children know and trust. The other attorney asked respondent to let him know if the client changed his mind; otherwise, the other attorney stated he would wait for whatever action respondent and the client would take.

On March 2, 2015, respondent sent an email to the other attorney indicating that the client had not changed his mind about visitation at his house with a third-party supervisor. Respondent did not renew her request for visitation for March 7; however, she stated that she was going to file a motion for contempt. The other attorney did not respond to this email. After March 2, there were no further telephone calls, emails, or other correspondence between respondent and the other attorney.

On March 3, 2015, the client sent a message to respondent asking if she was going to file a motion for contempt. On March 4, respondent told the client she would file a motion for contempt, but she wanted to wait for the children's mother to refuse visitation one more time. On March 6, the client sent a message to respondent stating that if he did not get visitation on March 7, he wanted respondent to file a motion for contempt on March 9.

On March 9, 2015, the client sent a message to respondent asking if she was going to file the contempt motion that day. Respondent replied, stating, "'[Y]es filing a contempt.'" Respondent did not file a motion for contempt on March 9. On March 10, the client sent respondent a message asking if the contempt motion had been filed. Respondent responded that the motion would be filed the next day. On March 11, the client sent a message to respondent asking again if the contempt motion had been filed. Respondent did not respond. At 11:10 a.m., on March 12, the client sent respondent another

- 1005 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. UBBINGA
Cite as 295 Neb. 995

message, again asking if the contempt motion had been filed. Respondent did not respond.

At 2:27 p.m. on March 12, 2015, the client sent a message to respondent stating that he spoke to the clerk of the court and learned that respondent had not filed any pleading in his case involving the children's mother. The client directed respondent to send him an invoice and refund his money so he could hire another lawyer. At 2:59 p.m., respondent sent the client a message stating, "'Sorry you feel that way. I will get your file together.'"

On March 13, 2015, the client and respondent exchanged several messages. Respondent stated, "'I will get your file together and invoice sent to you next week.'" After further messages, the client agreed to let respondent continue with his case so long as the contempt motion was filed. Respondent stated, "'I will have your contempt ready to file Monday.'"

On Monday, March 16, 2015, the client sent a message to respondent asking if the contempt motion had been filed. Respondent responded that it would be done the next day. On March 17, the client sent a message to respondent asking when the contempt motion would be filed. Respondent replied that she was going to "'call court and get date to put in the order for hearing.'" Respondent stated she would contact the client the next day. On the evening of March 18, the client sent respondent a message asking if she was going to call him. Respondent did not respond.

On March 19, 2015, the client and respondent exchanged several messages. The client asked if the contempt motion had been filed, and respondent stated she would file it "'this week.'" The client reminded respondent that it was Thursday and that the workweek ended the next day. On March 20, respondent sent a message to the client stating that the contempt hearing was scheduled for April 20 at 10 a.m.

Between April 6 and 17, 2015, the client sent three messages to respondent asking about the contempt hearing. Respondent did not respond to the messages. On April 19, respondent sent

a message to the client informing him that the hearing on the motion for contempt set for April 20 had to be continued for a couple weeks because the notice of hearing was not served in time.

On April 21, 2015, the client sent a message to respondent informing her that he checked with the court and learned that no contempt motion had been filed, nor was there an order setting the hearing date signed by the judge. The client directed respondent to send him his file so he could hire another lawyer to take over his case. Respondent replied that she would mail everything to the client. The referee noted in his report that at no time in February, March, or April 2015 did respondent file a motion for contempt to find the children's mother in contempt for failing to allow the client to exercise his visitation with his children.

On May 2, 2015, the client sent respondent a message asking if she had sent his file to him, and respondent did not reply. On May 7, the client sent a message to respondent stating that if he did not have his file by Monday, May 11, he would contact the Counsel for Discipline. On May 11, respondent sent a message to the client stating that his file would be ready on Wednesday, May 13. She asked if he wanted her to mail the file to him or if he wanted to pick it up. The client directed respondent to mail the file to him, and he also asked for a refund of half the money he had paid respondent. Respondent did not mail anything to the client.

On May 18, 2015, the client filed a grievance with relator alleging that respondent had neglected his case and lied to him about filing the motion for contempt.

On May 20, 2015, respondent sent a message to the client stating that she would send him a detailed itemization and his file. The client renewed his request for a refund of the fees he paid respondent. It was agreed that the client would meet with respondent at her office on May 26. Early in the morning on May 26, respondent sent the client a message that she wanted to meet on May 27 instead. The client responded that meeting

- 1007 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. UBBINGA
Cite as 295 Neb. 995

today would be better for him and suggested meeting later in the day. Respondent did not respond.

On May 27, 2015, respondent sent the client a message asking to change their meeting to Saturday, May 30. The client responded by asking respondent to just mail the documents to him rather than rescheduling the meeting. Respondent replied that she could send the documents, but she wanted to see the client. The client replied, "'Ok so what do you feel is fare [sic] money wise that I deserve to get back.'" Respondent stated, "'You decide. I don't need a fight with my medical problems. If you believe I deserve nothing so be it. I assume you will withdraw your complaints.'" The client replied that he wanted $1,000 back and that he would withdraw his complaints if respondent returned the money.

Respondent and the client did not meet on May 30, 2015, and respondent did not send the file or refund the money to the client. The referee noted in his report that as of May 30, 2016, respondent had not delivered to the client his file, an itemized statement of her time working on his cases, or a refund of his payments.

On July 1, 2015, in her initial response to relator regarding the client's grievance, respondent stated that she met with the client on February 9 and that "'it was decided we would get a court date for a contempt and see how things shook out. This was done and court set for April 21 [sic], 2015, service was not perfected and new date would be provided.'" On July 8, relator sent a letter to respondent asking her to respond to certain questions and to provide certain documents regarding her representation of the client. In her July 24 response, respondent claimed that she had prepared the contempt documents, secured a hearing date, and gave the documents to a process server who failed to properly serve the documents. Respondent claimed because the documents were not properly served, she did not file an application to show cause, and that is why there was no order for hearing signed by the judge.

On July 28, 2015, relator sent respondent a letter asking her to provide a copy of her transmittal letter to the process server who was to serve the contempt motion on the children's mother, and to include copies of the documents to be served. In her September 8 response, respondent included a copy of a letter dated March 4, 2015, to a process server, in which he was instructed to serve the application to show cause on the children's mother. Respondent also enclosed a copy of an application to show cause. She did not include any other documents in her September 8 response.

The referee determined in his report, with respect to the allegations set forth in the formal charges, that based on respondent's actions, she did not act promptly or diligently; did not keep the client reasonably informed about the status of the matter; engaged in conduct involving dishonesty, deceit, or misrepresentation; failed to provide an accounting to the client; and failed to deliver the client's file to him. Accordingly, the referee found that respondent violated her oath of office as an attorney and professional conduct rules §§ 3-501.1; 3-501.3; 3-501.4(a) and (b); 3-501.15(d); 3-501.16(d); 3-508.1(a) and (b); and 3-508.4(a), (c), and (d).

The referee identified certain aggravating factors, including that respondent failed to cooperate fully with relator and made false statements to relator. Respondent also failed to cooperate with the referee and to comply with the referee's orders. The referee noted that respondent has not accepted responsibility for her conduct and has shown no remorse. The referee also found as an aggravating factor that respondent's dishonest conduct adversely reflects on her fitness to practice law and her representation of the client "raises questions as to whether the Respondent is competent to practice law." The referee further stated that it is an aggravating factor that respondent's failure to properly represent the client resulted in a substantial delay in his being able to visit his children and that the outcome of the case would have been different had respondent competently represented the client.

- 1009 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. UBBINGA
Cite as 295 Neb. 995

The referee identified certain mitigating factors. The referee noted that there was no evidence presented indicating that respondent was not in good standing with the Nebraska State Bar Association. The referee also noted that respondent had practiced law in Nebraska for 14 years without any prior disciplinary complaints filed against her or penalties imposed on her.

With respect to sanctions to be imposed for the foregoing actions, considering the aggravating and mitigating factors, the referee recommended that respondent be suspended for a period of 1 year and that if reinstated, respondent be placed on monitored probation for a period of 2 years.

## ANALYSIS

In view of the fact that neither party filed written exceptions to the referee's report, relator filed a motion for judgment on the pleadings under § 3-310(L). When no exceptions to the referee's findings of fact are filed, the Nebraska Supreme Court may consider the referee's findings final and conclusive. *State ex rel. Counsel for Dis. v. Boyum*, 291 Neb. 696, 868 N.W.2d 326 (2015). Based upon the findings in the referee's report, which we consider to be final and conclusive, we conclude that the formal charges are supported by clear and convincing evidence, and the motion for judgment on the pleadings is granted.

A proceeding to discipline an attorney is a trial de novo on the record. *State ex rel. Counsel for Dis. v. Thebarge*, 289 Neb. 356, 854 N.W.2d 914 (2014). Violation of a disciplinary rule concerning the practice of law is a ground for discipline, and disciplinary charges against an attorney must be established by clear and convincing evidence. *State ex rel. Counsel for Dis. v. Sundvold*, 287 Neb. 818, 844 N.W.2d 771 (2014). See, also, *State ex rel. Counsel for Dis. v. Tighe*, 295 Neb. 30, 886 N.W.2d 530 (2016).

Based on the record and the undisputed findings of the referee, we find that the above-referenced facts have been

- 1010 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. UBBINGA
Cite as 295 Neb. 995

established by clear and convincing evidence. Based on the foregoing evidence, we conclude that by virtue of respondent's conduct, respondent has violated §§ 3-501.1; 3-501.3; 3-501.4(a) and (b); 3-501.15(d); 3-501.16(d); 3-508.1(a) and (b); and 3-508.4(a), (c), and (d) of the professional conduct rules. The record also supports a finding by clear and convincing evidence that respondent violated her oath of office as an attorney, and we find that respondent has violated said oath.

We have stated that the basic issues in a disciplinary proceeding against an attorney are whether discipline should be imposed and, if so, the appropriate discipline under the circumstances. See *State ex rel. Counsel for Dis. v. Boyum, supra*. Neb. Ct. R. § 3-304 of the disciplinary rules provides that the following may be considered as discipline for attorney misconduct:

> (A) Misconduct shall be grounds for:
>
> (1) Disbarment by the Court; or
>
> (2) Suspension by the Court; or
>
> (3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or
>
> (4) Censure and reprimand by the Court; or
>
> (5) Temporary suspension by the Court; or
>
> (6) Private reprimand by the Committee on Inquiry or Disciplinary Review Board.
>
> (B) The Court may, in its discretion, impose one or more of the disciplinary sanctions set forth above.

See, also, disciplinary rule § 3-310(N).

With respect to the imposition of attorney discipline in an individual case, each attorney discipline case must be evaluated in light of its particular facts and circumstances. *State ex rel. Counsel for Dis. v. Boyum, supra*. For purposes of determining the proper discipline of an attorney, we consider the attorney's actions both underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors. *Id*.

To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Tighe*, 295 Neb. 30, 886 N.W.2d 530 (2016).

The evidence in the present case establishes, among other facts, that respondent agreed to represent the client with respect to the exercise of his visitation with his children. However, respondent failed to complete such work and failed to communicate with the client regarding the actual status of her work. Respondent failed to provide the client with an accounting when asked, and respondent failed to provide the client with his file. In addition, respondent failed to cooperate with the relator's investigation in a timely manner, and respondent failed to comply with the referee's orders.

As aggravating factors, we note, as did the referee, that respondent has not taken responsibility for her actions. The referee further noted that respondent's dishonest conduct adversely reflects on her fitness to practice law and that "the evidence concerning the Respondent's representation of [the client] raises questions as to whether the Respondent is competent to practice law." As a further aggravator, the referee noted that respondent's failure to properly represent the client resulted in a substantial delay in the client's being able to visit his children.

As mitigating factors, we acknowledge, as did the referee, that respondent was in good standing with the Nebraska State Bar Association and that respondent had not received any prior discipline.

We have considered the record, the findings which have been established by clear and convincing evidence, and the applicable law. Upon due consideration, the court finds that

- 1012 -

Nebraska Supreme Court Advance Sheets
295 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. UBBINGA
Cite as 295 Neb. 995

respondent should be suspended for a period of 1 year. Upon reinstatement, if applied for and accepted, respondent shall be placed on monitored probation for a period of 2 years, and the monitoring shall be by an attorney licensed to practice law in the State of Nebraska and who shall be approved by the Counsel for Discipline. Respondent shall submit a monitoring plan with her application for reinstatement which shall include, but not be limited to, the following: During the first 6 months of the probation, respondent will meet with and provide the monitor a weekly list of cases for which respondent is currently responsible, which list shall include the date the attorney-client relationship began; the general type of case; the date of last contact with the client; the last type and date of work completed on the file (pleading, correspondence, document preparation, discovery, court hearing); the next type of work and date that work should be completed on the case; any applicable statutes of limitations and their dates; and the financial terms of the relationship (hourly, contingency, et cetera). After the first 6 months through the end of probation, respondent shall meet with the monitor on a monthly basis and provide the monitor with a list containing the same information as set forth above. Respondent shall work with the monitor to develop and implement appropriate office procedures to ensure that the clients' interests are protected. Respondent shall reconcile her trust account within 10 workings days of receipt of the monthly bank statement and provide the monitor with a copy within 5 working days. Respondent shall submit a quarterly compliance report with the Counsel for Discipline, demonstrating that respondent is adhering to the foregoing terms of probation. The quarterly report shall include a certification by the monitor that the monitor has reviewed the report and that respondent continues to abide by the terms of the probation. If at any time the monitor believes respondent has violated the professional conduct rules or has failed to comply with the terms of probation, the monitor shall report the same to the Counsel for Discipline. Finally, respondent shall pay all

- 1013 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
295 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. UBBINGA
Cite as 295 Neb. 995

the costs in this case, including the fees and expenses of the monitor, if any.

## CONCLUSION

The motion for judgment on the pleadings is granted. Respondent is suspended from the practice of law for a period of 1 year, effective immediately, after which period respondent may apply for reinstatement to the bar. Should respondent apply for reinstatement, her reinstatement shall be conditioned upon respondent's being on probation for a period of 2 years, including monitoring, following reinstatement, subject to the terms outlined above. Acceptance of an application for reinstatement is conditioned on the application's being accompanied by a proposed monitored probation plan the terms of which are consistent with this opinion. Respondent shall comply with Neb. Ct. R. § 3-316 (rev. 2014), and upon failure to do so, respondent shall be subject to punishment for contempt of this court. Respondent is also directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012) and § 3-310(P) and Neb. Ct. R. § 3-323(B) of the disciplinary rules within 60 days after an order imposing costs and expenses, if any, is entered by the court.

JUDGMENT OF SUSPENSION.