749 N.W.2d 894 (2008)
275 Neb. 842
STATE OF FLORIDA ex rel. DEPARTMENT OF INSURANCE OF the STATE of Florida, Receiver for United Southern Assurance Company, a Florida Corporation Authorized to Transact an Insurance Business in Florida, appellee,
v.
COUNTRYWIDE Truck INSURANCE AGENCY, INC., A Florida corporation, appellee, and
Countrywide Insurance Agency, Inc., A Nebraska corporation, and David L. Fulkerson, appellants.
No. S-06-1220.
Supreme Court of Nebraska.
June 6, 2008.
*895 William E. Gast and Michael D. McClellan, of Gast & McClellan, Omaha, for appellants.
Robert F. Craig and Jenna B. Taub, of Robert F. Craig, P.C., Omaha, for appellee State of Florida ex rel. Department of Insurance of the State of Florida.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
WRIGHT, J.

NATURE OF CASE
The State of Florida (Florida), on the relation of the Department of Insurance of the State of Florida, as the receiver of United Southern Assurance Company (USAC), an insolvent insurance company, brought suit against Countrywide Truck Insurance Agency, Inc. (Truck); Countrywide Insurance Agency, Inc. (Agency); and David L. Fulkerson to recover money Truck allegedly owed USAC. Florida alleged that Agency was the "alter ego" of Truck and that Fulkerson was the operator, director, and "controlling person" of both Truck and Agency. Florida sought relief collectively against Truck, Agency, and Fulkerson.
At the conclusion of trial, the district court sustained Florida's motion for a directed verdict, finding Truck, Agency, and Fulkerson jointly and severally liable for fraudulently transferring $2,235,361.95 from Truck to Agency. Agency and Fulkerson appeal, asserting that the uncontroverted evidence shows that no such transfer occurred. The issue is whether the court erred in directing a verdict in favor of Florida.

SCOPE OF REVIEW
In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an *896 admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. LeRette v. American Med. Security, 270 Neb. 545, 705 N.W.2d 41 (2005).

FACTS
In 1989, USAC and Truck entered into a "General Agency Agreement," pursuant to which Truck functioned as an insurance agent on behalf of USAC in Nebraska and numerous other states. Truck collected premiums for insurance products provided by USAC. Truck's principal office was in Omaha, Nebraska. Fulkerson managed Truck, functioned as its president, and was one of the five directors of the corporation. USAC was an insurance company that wrote and issued policies of insurance to truckdrivers. USAC and Truck were Florida corporations. USAC was regulated by the Florida Department of Insurance (the FDI) and owned Truck.
Truck collected monthly premiums from its insureds. Before procuring insurance, it would collect 2.4 times the amount of the monthly premium from the insured and place that amount in a customer deposit account. Each month, the insured paid the monthly premium into the customer deposit account and Truck withdrew the monthly premium as it came due. This procedure left an amount equal to 2.4 times the monthly premium in the customer deposit account. If an insured was late in paying the monthly premium, Truck used the funds in the customer deposit account to procure insurance on behalf of the insured. Because many insureds were out on the road and were not able to pay the monthly premiums on time, this process prevented gaps in coverage. The process continued until either the insured or Truck canceled the policy. Once the policy was canceled, any money belonging to the insured in the customer deposit account was returned.
Truck used this process to collect premiums and procure insurance for its customers from USAC. Truck transferred the insureds' monthly premiums into USAC's trust account as the premiums came due. USAC then issued insurance and paid Truck a commission of 18.5 percent. Fulkerson testified that from 1989 to 1991, this process "worked perfectly."
In 1991, Concord General Corporation (Concord), a corporation owned by Jeff Beresford-Wood, purchased USAC. Concord was a holding company that owned numerous insurance companies and agencies. At that time, USAC was in a poor financial position. As a condition for approval of the purchase and the continued licensure of USAC, the FDI required Concord to remove certain assets or subsidiaries owned by USAC and replace them with cash. Concord consequently took $2 million from Truck's customer deposit account and used that money to purchase Truck from USAC. Concord replaced the $2 million with a note receivable on Truck's balance sheet and extended the time for payment of premiums to USAC from 25 days to 90 days. This extension enabled Truck to use the premium money to replenish the $2 million taken from the customer deposit account. Concord retained Fulkerson as Truck's president, but he was instructed that Bruce Ricci, a board member of Concord, USAC, and Truck, would be his supervisor. Concord subsequently sold USAC to JBW Corporation, which was also owned by Beresford-Wood.
FDI regulations stated that an insurance company could write insurance for an *897 amount up to three times the amount of its assets. The FDI informed USAC that because the value of two of its subsidiary companies had depreciated, it must reduce the amount of insurance it wrote. The reduction of USAC's insurance created problems for Truck because it relied on USAC to write insurance, and if USAC did not write insurance, Truck might go out of business. Other insurance companies were reluctant to provide coverage to Truck's insureds because it was known that Truck was affiliated with USAC and would likely return its business to USAC as soon as USAC's financial problems were solved.
Accordingly, Concord/JBW Corporation (the record does not always distinguish between the two companies) decided to sell Truck to a person or entity that could find another company to write insurance. Truck would not be able to find another company to write insurance if it was known that Concord/JBW Corporation owned Truck. Thus, Concord/JBW Corporation decided to sell Truck quickly before all of its insureds moved to other companies and Truck lost all of its value.
Fulkerson was asked to buy Truck. He agreed, with certain conditions. On June 1, 1995. Fulkerson entered into a "Stock Purchase Agreement" in which Concord/JBW Corporation agreed to sell Truck's stock. However, because Beresford-Wood had pledged Truck's stock as collateral, Concord/JBW Corporation could not deliver the stock and the deal was put on hold. The parties then entered into an "Interim Management Agreement." Fulkerson agreed to manage Truck until the parties could close the Stock Purchase Agreement or the "Asset Purchase Agreement" or until such time as the parties otherwise mutually agreed. Concord/JBW Corporation was unable to produce the stock, and the record does not show that the Stock Purchase Agreement was completed. Instead, Fulkerson exercised his option to purchase Truck's assets and assigned this option to Agency, a Nebraska corporation that he and USA Insurance Group, Inc., owned in equal shares.
Subsequently, Truck's board of directors voted 3 to 2 to sell Truck's assets to Agency, and an Asset Purchase Agreement was signed on September 8, 1997, to be effective September 1, 1997. Agency acquired all of Truck's assets except (1) Truck's bank accounts and petty cash accounts, (2) Concord's $2 million promissory note owed to Truck, (3) the lawsuits pending in which Truck was a plaintiff, and (4) Truck's accounts receivable. The price consisted of $168,003.68 for furniture, fixtures, equipment, trade name, and telephone numbers, and also the balance of assets and $831,996.36 for Truck's "Book of Business." Fulkerson continued in a similar position at Agency as he had held at Truck.
The "Book of Business" included all of Truck's interest in insurance policies written by Truck and the customer deposit account, which on September 1, 1997, amounted to $2,480,431. To the extent there was a shortfall in such deposits, Agency was assigned an interest in Truck's receivables to collect any such shortfall until the above amount was collected.
Between September 8 and 18, 1997, Truck canceled all USAC's policies, and Agency rewrote most of the policies with Acceleration National Insurance Company (Acceleration). Fulkerson testified that all of the money held in the customer deposit account ($2,325,401) was either returned to the insureds or applied to new policies for the benefit of the insureds.
On September 22, 1997, the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida, placed USAC *898 into receivership for the purpose of liquidation. The court appointed the FDI as receiver.
In January 1998, the State of Florida, on the relation of the FDI, filed a petition in the district court for Douglas County, alleging that Truck collected premiums for USAC but failed to remit them pursuant to the parties' agency agreement. The petition alleged that Agency was the alter ego of Truck and that Fulkerson was the operator, director, and controlling person of both Truck and Agency.
Florida alleged that in 1989, USAC and Truck entered into a "General Agency Agreement" in which Truck functioned as an insurance agent on behalf of USAC in Nebraska and numerous other states and collected premiums for insurance products provided by USAC. Florida alleged that during the months of May through August 1997, Truck collected and reported the collection of USAC premiums which, after deducting the 18.5-percent commission to which Truck was entitled, amounted to $3,171,817. Florida further alleged that "defendants" collected additional premium deposits totaling $2,325,401 and that "defendants" remitted only about $500,000, leaving a balance due and owing of at least $4,997,218.
Based upon these factual allegations, Florida sought relief against Truck, Agency, and Fulkerson on nine separately designated causes of action: conversion of trust funds, statutory obligation to remit premium, enforcement of security interest, fraudulent conveyance, receivership fraudulent conveyance, conversion, breach of contract, breach of fiduciary duty, and accounting. Each cause of action referred to Truck, Agency, and Fulkerson collectively as "defendants." Truck did not file a responsive pleading, and Florida moved for default judgment against Truck.
Agency and Fulkerson, who were not in default, moved to stay the entry of default judgment against Truck until after trial. Because Florida sought relief jointly against all named defendants, Agency and Fulkerson claimed the entry of a default judgment against Truck would prejudice them. The district court overruled the motion to stay and entered judgment against Truck.
Agency and Fulkerson appealed to this court, and we concluded that the district court erred in entering the default judgment. See State of Florida v. Countrywide Truck Ins. Agency, 258 Neb. 113, 602 N.W.2d 432 (1999) (Countrywide 1). We held that although Truck was in default, the district court should have deferred entry of judgment until the claims against Agency and Fulkerson were adjudicated. Florida sought to hold all three defendants jointly liable as a single entity. It alleged joint and collective action by the defendants as opposed to independent acts on the part of each named defendant. We construed the operative petition to allege that the three named defendants were jointly liable as a single entity. We reversed and vacated the judgment and remanded the cause for further proceedings consistent with our opinion.
Thereafter, a jury trial commenced on August 14, 2006. Florida presented evidence as to the amount of premiums written and collected by Truck for the months of May through August 1997. It was undisputed that Truck had collected $3,171,817 ($809,384.04 for May, $781,421.71 for June, $790,490.83 for July, and $790,520.42 for August). Also undisputed were the credits given by Florida to the defendants in the total amount of $846,455.05, resulting in a net amount of $2,325,361.95 in collected premiums.
Agency and Fulkerson presented evidence that the parties had agreed that *899 collected premium money was not to be remitted to Truck at the time it was collected, but was instead to be used as customer deposit account money for 90 days. The record reflects that as part of Concord's consideration for the $2 million from Truck, USAC was required to allow Truck 90 days to remit collected premiums. Agency and Fulkerson's evidence showed that 90 days' worth of premiums were roughly equivalent to the amount needed to replenish the $2 million taken from the customer deposit account.
When USAC stopped providing insurance, no additional premiums were paid to Truck. Agency and Fulkerson adduced evidence that Truck was forced to either use the money in the customer deposit account to procure insurance from a different company for its insureds or return the money to them. Instead of a $2 million deficit in the customer deposit account, there was a deficit in the premium account. Although Truck's records showed that it had collected monthly premiums of $2,325,361.95, nearly all of that money had been placed in the customer deposit account. This money was either returned to the insureds or used to procure insurance for the customers from a different company. This exhausted most, if not all, of the 90 days' worth of collected premiums. The only evidence of money transferred from Truck to Agency or Fulkerson was the transfer of $2,325,401 found within the customer deposit account. There was no evidence of any other transfer.
At the conclusion of the evidence, Florida moved for directed verdict of $2,325,361.95. It claimed that after applying all credits Truck asserted, the evidence was undisputed that Truck still owed earned premiums totaling $2,325,361.95 ($3,171,817 minus $846,455.05) for the months of May through August 1997.
Agency and Fulkerson objected to the motion. In opposition, they averred that although Truck had collected premiums over the previous 90 days, the parties had agreed that the most recent 90 days' worth of earned premiums would be transferred into the customer deposit account to replenish the $2 million deficit owed by Concord. They argued that the premiums became customer deposit account money, rather than earned premium money.
The district court entered judgment in favor of Florida and against Agency and Fulkerson in the amount of "$2,235,361.95." It concluded that "there was a fraudulent transfer by all Defendants of this amount from [Truck] to [Agency]." (The discrepancy in the amount appearing in the court's order was presumably a result of the court's transposing the "3" and "2" in error ($2,325,361.95 versus $2,235,361.95).) The court imposed prejudgment interest on the judgment in the amount of $2,442,584.70, for a total amount of $4,677,946.65. The court entered the judgment against all the defendants, jointly and severally.
Florida also moved for directed verdict in the amount of $2,325,401, which it claimed was money held in the customer deposit account. It claimed that the defendants had not proved that the money was returned to the policyholders or used to secure insurance for the policyholders with another insurance company. Florida claimed the law required that if that money went to the policyholders or to secure insurance on behalf of the policyholders, all the assets of Truck, including this money, must be collected and used to pay USAC's claimants in order of priority.
In opposition to this motion, Agency and Fulkerson asserted that the money was not an asset of USAC and that the evidence was undisputed that the customer deposit account money was used to secure *900 insurance on behalf of the policyholders or returned to the policyholders. Agency and Fulkerson referenced exhibit 136, which stated that Acceleration had informed Florida that Acceleration had rewritten 1,120 policies of former Truck policyholders and had received $1,793,526 from Agency after subtracting Agency's commission. Agency and Fulkerson averred that the difference between the $2,325,401 and the $1,793,526 was the commission on the 1,120 policies and money used to secure insurance for policyholders that Acceleration could not insure because it was not licensed in some states. They claimed that an additional $54,000 was returned directly to policyholders who did not wish to be insured through Agency.
As to Florida's second motion for directed verdict, the district court concluded that no factual question existed on this matter either, and it dismissed the jury. The court overruled this motion for directed verdict.
Agency and Fulkerson's motion for new trial was overruled, and they appeal.

ASSIGNMENTS OF ERROR
Agency and Fulkerson assign nine errors, including that the district court erred (1) in finding that "[Truck] and [Agency] were the alter egos of ... Fulkerson," (2) in finding there was a fraudulent transfer, and (3) in granting Florida's motion for directed verdict.

ANALYSIS
Agency and Fulkerson claim the district court erred in directing a verdict in favor of Florida and in finding there was a fraudulent transfer of $2,235,361.95 from Truck to Agency. We agree. The record shows that Truck transferred to Agency $2,325,401. There was evidence presented that this money was in the customer deposit account and was used to purchase replacement insurance for the former clients of Truck. The record does not establish that any other transfer occurred.
In reviewing Florida's motion for a directed verdict, we treat the motion as an admission of the truth of all competent evidence submitted on behalf of Agency and Fulkerson, who are entitled to have every controverted fact resolved in their favor and to have the benefit of every inference which can reasonably be deduced from the evidence. See LeRette v. American Med. Security, 270 Neb. 545, 705 N.W.2d 41 (2005). Florida characterized the named defendants as a single entity. It alleged that Agency was the alter ego of Truck and referred to Fulkerson as the "controlling person" of both corporations. Based on these allegations, we concluded in Countrywide I that no one defendant could be liable unless all were liable.
USAC and Truck were owned by Concord or JBW Corporation at all times relevant. Concord and JBW Corporation were, in turn, owned and controlled by Beresford-Wood. Fulkerson was Truck's president, but he was supervised by Ricci, who was a board member of Concord, USAC, and Truck. Fulkerson did not own stock in any of these companies. He was one of five members of Truck's board of directors. In 1997, Truck's board of directors voted to sell Truck to Agency. As a part of the agreement, Agency was given the right to collect and use the premiums of Truck to fund Truck's customer deposit account up to $2,480,431.
The evidence introduced by Agency and Fulkerson supports the fact that the customer deposit account was in fact funded with premiums collected by Truck. There is evidence that the money from this account was either returned to the insureds or applied to new policies purchased for the benefit of such insureds. There was *901 no evidence that Fulkerson used the funds from the premiums in this account for his own benefit. There was evidence that the only transfer that occurred from Truck to Agency was money in the customer deposit account that was used to purchase replacement insurance.
The question whether a transfer of property was made with intent to defraud creditors is a question of fact. First State Bank of Scottsbluff v. Bear, 172 Neb. 504, 110 N.W.2d 83 (1961). The burden is upon the creditor to prove by clear and convincing evidence that fraud existed in a questioned transaction. See Eli's, Inc. v. Lemen, 256 Neb. 515, 591 N.W.2d 543 (1999). Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. In re Trust Created by Isvik, 274 Neb. 525, 741 N.W.2d 638 (2007).
Whether Agency or Fulkerson committed a fraudulent transfer was a question of fact for the jury. The district court erred in granting Florida's motion for directed verdict and in entering judgment in favor of Florida. Accordingly, we reverse and vacate the judgment of the district court.

CONCLUSION
The district court erred in granting a directed verdict in favor of Florida. Giving all reasonable inferences to Agency and Fulkerson, there is a question of fact whether a fraudulent transfer occurred between Truck and Agency. There is evidence that the transfer of $2,235,401 represented the amount held in the customer deposit account on behalf of Truck's insureds and that Agency used this money to purchase insurance for Truck's insureds. There is no evidence of any other transfer.
For the reasons set forth herein, the judgment of the district court is reversed and vacated, and the cause is remanded for further proceedings. We decline to consider the remaining assignments of error.
REVERSED AND VACATED, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.