Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/11/2017 09:07 AM CDT

STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, RELATOR,
v. WILLIAM E. GAST, RESPONDENT.

___ N.W.2d ___

Filed May 19, 2017.    No. S-15-800.

1. **Disciplinary Proceedings: Appeal and Error.** Because attorney discipline cases are original proceedings before the Nebraska Supreme Court, the court reviews a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings.

2. **Disciplinary Proceedings.** The basic issues in a disciplinary proceeding against an attorney are whether the Nebraska Supreme Court should impose discipline and, if so, the appropriate discipline under the circumstances.

3. **Disciplinary Proceedings: Proof.** Violation of a disciplinary rule concerning the practice of law is a ground for discipline, and disciplinary charges against an attorney must be established by clear and convincing evidence.

4. **Disciplinary Proceedings.** To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.

5. ____. Cumulative acts of attorney misconduct are distinguishable from isolated incidents, therefore justifying more serious sanctions.

6. ____. Responding to disciplinary complaints in an untimely manner and repeatedly ignoring requests for information from the Counsel for Discipline indicate a disrespect for our disciplinary jurisdiction and a lack of concern for the protection of the public, the profession, and the administration of justice.

7. ____. In evaluating attorney discipline cases, the Nebraska Supreme Court considers aggravating and mitigating circumstances.

8. ____. The propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases.

Original action. Judgment of suspension.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

William E. Gast, pro se.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Per Curiam.

## I. NATURE OF CASE

Attorney William E. Gast was charged by the Counsel for Discipline with violating Neb. Ct. R. of Prof. Cond. §§ 3-503.5(a)(1), 3-508.2(a), and 3-508.4(a) and (d), and violating his oath of office as an attorney as set forth in Neb. Rev. Stat. § 7-104 (Reissue 2012). The charges were based on a series of communications sent by Gast to Douglas County District Court Judge Peter C. Bataillon and attorney Robert Craig. We conclude that Gast violated these provisions as charged and order that he be suspended from the practice of law for a period of 1 year, to be followed by a period of 2 years' probation upon reinstatement.

## II. BACKGROUND

This disciplinary proceeding results from Gast's conduct in the course of litigation in the case *State of Florida v. Countrywide Truck Ins. Agency*[1] in the district court for Douglas County. The case has been appealed to this court several times since it was originally filed in 1998.[2] The details of the litigation are summarized: The State of Florida,

---

[1] *State of Florida v. Countrywide Truck Ins. Agency*, 294 Neb. 400, 883 N.W.2d 69 (2016).

[2] See, *State of Florida v. Countrywide Truck Ins. Agency*, 275 Neb. 842, 749 N.W.2d 894 (2008); *State of Florida v. Countrywide Truck Ins. Agency*, 270 Neb. 454, 703 N.W.2d 905 (2005); *State of Florida v. Countrywide Truck Ins. Agency*, 258 Neb. 113, 602 N.W.2d 432 (1999).

Department of Insurance (Florida), was appointed as the receiver of an insolvent Florida insurance company.[3] Florida pursued a claim on behalf of the insolvent company against Countrywide Truck Insurance Agency, Inc. (Countrywide), and its owner David L. Fulkerson, alleging that Fulkerson converted money that was owed to the insolvent company for his personal use. Gast began representing Fulkerson in early 2002. Fulkerson died in 2009, and his widow, Diederike M. Fulkerson (Diederike), who was the executor of his estate, was added as a defendant.

In the most recent appearance of that case before this court, Gast appealed the district court's order granting Florida $15,000 in attorney fees as a sanction for a frivolous motion to recuse that he had filed.[4]

Judge Bataillon had taken over the case from another judge when that judge retired in 2000. Over the long course of the Countrywide litigation, Gast became very dissatisfied with the rulings of Judge Bataillon. He believed that Judge Bataillon made "blatant errors of law."

In 2004, Judge Bataillon denied Gast's motion for partial summary judgment on what Gast believed was an unsound legal basis and which he believed "made absolutely no sense whatsoever." This led Gast to believe that "something is really wrong here, something is really, really wrong." Gast filed a motion to recuse Judge Bataillon on the basis that one of his prior orders contained errors that could reasonably be believed to be based on either a lack of attention, a lack of ability, a lack of impartiality, or some combination of these reasons. The motion was denied by Judge Bataillon. Thereafter, Gast filed an appeal and a writ of mandamus. The mandamus was denied, and the appeal was dismissed for lack of a final, appealable order.[5] Gast testified at his disciplinary hearing that

---

[3] See *State of Florida v. Countrywide Truck Ins. Agency, supra* note 1.

[4] *Id.*

[5] *State of Florida v. Countrywide Truck Ins. Agency, supra* note 2, 270 Neb. 454, 703 N.W.2d 905 (2005).

after this point, "everything that happened . . . made it appear to me that the outcome was being engineered."

In 2006, the case was tried, and Gast was convinced the result was "predetermined." At the conclusion of the evidence, Florida moved for a directed verdict, which the district court granted.[6] On appeal, this court reversed the directed verdict, reasoning that the intent to defraud creditors is a factual question that should have been decided by the jury.[7]

After Fulkerson died in 2009, Florida pursued its claim against his estate in probate court, which denied the claim. After this, Fulkerson's estate was dropped as a defendant in the district court litigation, but Florida continued pursuing its claims against his widow, Diederike.

The case was retried to the bench and submitted in April 2014. After submitting proposed findings of fact and conclusions of law to the court, Gast sent a "Personal, Private and Confidential Memorandum" to Judge Bataillon and opposing counsel Craig, dated April 15, 2014 (referred to as "exhibit A"). The memorandum insinuated that "personal reasons" were driving Judge Bataillon's actions in the case. It states in part:

> I can only speculate as to your personal reasons, but I choose not to. Unfortunately, whatever those might be, they may indeed overwhelm [Diederike's] health. If that happens, how will you feel? Not good, I'm sure.
>
> I have long accepted that I will die without ever knowing the real reason(s) for what has transpired in this matter since I first became involved in early 2002. But I do know that neither I, . . . Fulkerson, nor [Diederike] have ever done anything to deserve the hostility that has prevailed from my very initial involvement. Which, by the way, long predated and actually necessitated the recusal request.

---

[6] *State of Florida v. Countrywide Truck Ins. Agency, supra* note 2, 275 Neb. 842, 749 N.W.2d 894 (2008).

[7] *Id.*

. . . Consider what it is doing to a very sweet 79-year-old woman who deserves NONE of the emotional and physical damage that this is causing her. Also, how it could impact the integrity and reputation of an otherwise respectable Judgeship. And third, the worsening consequences to [Craig] for the mounting costs to Florida and the [insolvent company's] creditors.

. . . .

Bottom line, this case is over, and you both know it. The sooner that it is made official, the better it will be for all concerned . . . especially the justice system of this State, for which it has been a "black eye" for years. If it is left to the Supreme Court to do so, it could be very ugly indeed for everyone. Ending it now might allow for some face-saving for all concerned, and for some well-deserved relief for [Diederike].

This memorandum was sent about a week after the case was submitted to the court.

In July 2014, Gast's wife had lunch with the ex-wife of Craig. She told Gast's wife that Craig and Judge Bataillon (then-attorney Bataillon) had been "best buds." According to Gast:

[Craig's ex-wife] related parties, dinner engagements at the Omaha Press Club, and the softball team on which . . . Craig and [then-attorney] Bataillon played. She told me the details, and they would have parties afterwards, and sometimes they would go to bars, and the wives would meet them, and she referred to Bataillon as Pete.

In August 2014, Gast filed a second motion to recuse Judge Bataillon, citing Neb. Rev. Code of Judicial Conduct § 5-302.4 that "[a] judge shall not permit . . . social . . . interests or relationships to influence the judge's judicial conduct or judgment." The motion also stated:

This Motion is additionally based upon (among other violations) newly-acquired evidence of this Court's lack of "impartiality," lack of "independence," and lack of "integrity" (as those terms are defined in the Nebraska

Code of Judicial Conduct) that existed from soon after
the Hon. Peter C. Bataillon inherited this action from the
Hon. Michael McGill and that has continuously persisted
throughout the period of more than twelve years to the
very date of this Motion.

It further alleged that Gast "very recently acquired reliable
information that, for a period of at least twenty years prior to
the appointment of . . . Judge Bataillon to the Douglas County
District Court, a very close personal friendship and continu-
ous social relationship had existed between" Judge Bataillon,
Craig, and Craig's cocounsel. The petition alleged that the
relationship was never disclosed by Craig or Judge Bataillon
and that "the relationship has been improvidently, unethically
and continuously concealed by the Hon. Peter C. Bataillon,
Craig and [cocounsel] from the time Bataillon inherited this
case . . . until the very present day."

The specific allegations in the motion to recuse included that
then-attorney Bataillon and Craig played on a summer softball
team together "for approximately three years in the 1970s or
early 1980s," including socializing after games; attended par-
ties together at the cocounsel's home; and attended dinners at
the Omaha Press Club.

Following the motion to recuse, Gast sent a letter to Judge
Bataillon and Craig (referred to as "exhibit B"). It said,
in part:

Now that the truth of your pre-suit relationship has
been discovered, the Docket Sheet itself demonstrates the
"cover-up" quality to each and every successive refusal
to disclose it after your initial failure to do so. Check
it out yourselves. It actually takes on a crescendo-like
appearance on its very face. The lesson about cover-ups
is that they usually come undone eventually, and the
consequences to those involved always amplify in direct
proportion to their pre-discovery duration. This "cover-
up" is more than 12 years old!

Judge, your responsibility is obvious and it is immedi-
ate. . . . You must now recuse *sua sponte*. And I trust that

you will not force me to file the augmented Motion, or to conduct a public hearing on it, or to serve the Subpoenas or to take the Depositions.

Later in August 2014, the court held a hearing on the motion to recuse. At the hearing, Judge Bataillon said, "The only contact that I had with . . . Craig was probably in the early '80s I played on the same softball team with him for maybe a year or two. That's it." Craig did not remember being on the same softball team as Judge Bataillon during the late 1970's or early 1980's, but had been told by Craig's cocounsel that Judge Bataillon had "played some" on the team. Judge Bataillon was not persuaded by Gast's claims. He said:

At all times I have upheld the law. At all times I have acted fairly and impartially based upon what the evidence has been, based upon what the facts have been, and things of that nature.

This allegation that I failed to disclose, there was nothing to disclose that — that rises to any level under the judicial ethics or any of the lawyers in this matter. As such, your motion is overruled.

In September 2014, Gast sent another letter to Judge Bataillon, urging him to recuse, citing a case from the Missouri Court of Appeals.[8] In this letter, Gast suggested that Judge Bataillon had "badgered" Gast in a previous hearing and Gast "insist[ed]" that Judge Bataillon recuse "at once, for your own sake as much as anything else."

In October 2014, Gast sent yet another letter to Judge Bataillon (referred to as "exhibit C"), which said, in part:

Judge Bataillon, you should realize that you have an ever-so-brief opportunity to quietly back out of this case on a purely technical ground, *i.e.* one that is *not* related to misconduct. Before you elect to pass it [sic] up this chance, I respectfully submit that you think very carefully about your own best interests.

---

[8] *Williams v. Reed*, 6 S.W.3d 916 (Mo. App. 1999).

(Emphasis in original.) In this letter, Gast references an incident in a prior hearing (after the motion to recuse hearing) in which Judge Bataillon disclosed that he, his wife, and her brother were eating dinner at a restaurant and noticed that Craig was also eating in the restaurant. Judge Bataillon's wife went over and greeted Craig. Gast said in the letter that Judge Bataillon, his wife, and his brother-in-law were all material witnesses to the "recusal issue." Gast wrote, "It is also extraordinarily curious that such a meeting with . . . Craig might have occurred purely by chance, at that very time." He went on to say:

> Sir, since all of that makes it "material," my client is entitled to your own sequestered deposition in the event that you refuse to recuse. Moreover, all conceivable means of conventional and electronic communication between yourself and . . . Craig will have to be subpoenaed, in order to learn just how "chance" the . . . [r]estaurant encounter actually was.

Gast also threatened to depose Judge Bataillon's wife, his brother-in-law, and Craig, "Unless, of course, you recuse now." He concluded, "Sir, I know that you will eventually do the right thing. I just pray that it happens in time to do the most justice to the office that you hold."

In May 2015, Judge Bataillon entered judgment for Florida in the approximate amount of $2.2 million. Later that month, Judge Bataillon granted Florida's motion for sanctions, concluding that Gast's motion to recuse was "'groundless and frivolous,'" and awarded $15,000 in attorney fees.[9] On appeal, this court did not review the district court's award of attorney fees, because Gast's license to practice law was suspended at the time he filed his brief, due to his failure to pay his annual dues and complete his required continuing legal education courses.[10]

---

[9] *State of Florida v. Countrywide Truck Ins. Agency, supra* note 1, 294 Neb. at 403, 883 N.W.2d at 71.

[10] *State of Florida v. Countrywide Truck Ins. Agency, supra* note 1.

Amended formal charges were filed against Gast in February 2016, to which Gast filed an answer. The charges were based on three communications he sent to Judge Bataillon and Craig: exhibit A, the memorandum sent in April 2014; exhibit B, the letter sent in August 2014; and exhibit C, the letter sent in October 2014.

A disciplinary hearing was held before a referee in June 2016, at which Gast and Craig testified. At the hearing, Gast submitted an amended answer. The referee issued his report and recommendation, making the recommended finding that Gast had violated certain provisions of the Nebraska Rules of Professional Conduct and recommending that Gast be suspended for 30 days and placed on probation upon reinstatement for a period of 2 years. The counsel for discipline filed exceptions to the referee's report and recommended findings and a supporting brief, agreeing with some of the recommended findings and disagreeing with others. Gast did not file a brief or any exceptions. He appeared at oral arguments but did not argue or make any comments.

## 1. Charges

Gast was charged with violating two particular provisions of the Nebraska Rules of Professional Conduct in the amended formal charges. These rules provide that "[a] lawyer shall not: (1) seek to influence a judge . . . by means prohibited by law"[11] and that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ."[12] Violation of these particular rules was alleged to constitute a violation of the general rule against professional misconduct, which provides: "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct [or] (d) engage in conduct that is

---

[11] § 3-503.5(a)(1).

[12] § 3-508.2(a).

prejudicial to the administration of justice."[13] These violations also were alleged to violate Gast's oath of office as an attorney, as provided in § 7-104, which requires an attorney to "solemnly swear [to] support the Constitution of the United States, and the Constitution of this state, and [to] faithfully discharge the duties of an attorney and counselor, according to the best of [his or her] ability."

Gast admitted that he had violated § 3-503.5(a)(1) of the Nebraska Rules of Professional Conduct by seeking to improperly influence Judge Bataillon by going "beyond arguing the issues of the case and the facts in evidence therein." But he denied that he had violated § 3-508.2(a) by making a statement that he knew was false or with reckless disregard as to its truth or falsity concerning the integrity of Judge Bataillon.

## 2. Exceptions to Recommendations of Referee

The Counsel for Discipline took exception to three of the referee's recommended findings and conclusions: (1) that Gast did not make the statement in exhibit B with reckless disregard for its truth or falsity, in violation of § 3-508.2(a); (2) that Gast had withdrawn his admission that he violated § 3-503.5(a)(1) by sending exhibit C and that Gast did not violate § 3-503.5(a)(1) by sending exhibit C; and (3) that Gast be suspended for 30 days and given probation for 2 years upon reinstatement.

## III. STANDARD OF REVIEW

[1-3] Because attorney discipline cases are original proceedings before this court, we review a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings.[14] The basic issues in a disciplinary proceeding against an attorney are whether the Nebraska

---

[13] § 3-508.4(a) and (d).

[14] See *State ex rel. Counsel for Dis. v. Walz*, 291 Neb. 566, 869 N.W.2d 71 (2015).

Supreme Court should impose discipline and, if so, the appropriate discipline under the circumstances.[15] Violation of a disciplinary rule concerning the practice of law is a ground for discipline, and disciplinary charges against an attorney must be established by clear and convincing evidence.[16]

## IV. ANALYSIS

### 1. § 3-503.5(a)(1): Seeking to Influence Judge by Means Prohibited by Law

The referee recommended that we find that Gast had violated § 3-503.5(a)(1) with respect to exhibits A and B, but not with respect to exhibit C. The Counsel for Discipline disagreed with the referee's recommended finding that Gast did not violate § 3-503.5(a)(1) with respect to exhibit C.

The referee recommended we find that Gast violated § 3-503.5(a)(1) by authoring and transmitting exhibits A and B on the basis that in his answer and at the hearing, Gast admitted that those communications violated that provision. But the referee made the recommended finding that Gast had not violated this provision with respect to exhibit C for two reasons. First, the referee appears to have concluded that Gast withdrew the admission made in his answer that exhibit C violated this provision. Second, the referee read our decision in *State ex rel. Counsel for Dis. v. Koenig*,[17] as supporting a very narrow reading of the phrase "by means prohibited by law" in § 3-503.5(a)(1). He concluded that Gast did not seek to influence Judge Bataillon by means prohibited by law. We will address these two issues in turn.

We agree that Gast clearly admitted in his answer that he violated § 3-503.5(a)(1) by authoring and sending exhibit A.

---

[15] *Id.*

[16] *State ex rel. Counsel for Dis. v. Ubbinga*, 295 Neb. 995, ___ N.W.2d ___ (2017).

[17] *State ex rel. Counsel for Dis. v. Koenig*, 278 Neb. 204, 769 N.W.2d 378 (2009).

We do not agree that Gast withdrew his admission that he violated that provision by sending exhibit C.

Gast admitted in his answer that he authored the letter and that by sending it, he "sought to improperly influence Judge Bataillon in violation of § 3-503.5(a)(1) of the Nebraska Rules of Professional Conduct." And Gast stated at the hearing that his answer admitted violating this rule with respect to exhibits A, B, and C. But in another part of his answer, he says of exhibit C that "although its content remained within the facts established on the record of the courtroom proceedings" of the *State of Florida v. Countrywide Truck Ins. Agency* case, "the threatening tone" of the letter, which was "transmitted on a personal and confidential basis, may indeed be violative of Comment [4] of § 3-503.5(a)(1) of the Nebraska Rules of Professional Conduct." The referee relied upon Gast's statements at the hearing, in which he appeared to equivocate on his admission: "I'm now of the opinion [that] I was too hasty in agreeing that this was offensive of any rule," and "I now regret the fact that I conceded a violation of Exhibit [C], but it's in the Answer."

Gast acknowledged that he did, in fact, admit to a violation of § 3-503.5(a)(1). At no point in the hearing did Gast seek to withdraw his admission orally or to amend his answer. We find that Gast has waived his right to contest the fact that he violated § 3-503.5(a)(1) of the Nebraska Rules of Professional Conduct by authoring and transmitting exhibits A and C.

Even if Gast had not made the admission, we conclude that he did violate that rule by sending those exhibits. We address this issue in order to clarify our interpretation of § 3-503.5(a)(1) of the Nebraska Rules of Professional Conduct and the *Koenig* case, which apparently caused some confusion.

Section 3-503.5(a)(1), which is based on rule 3.5(a)(1) of the American Bar Association (ABA) Model Rules of Professional Conduct, prohibits attorneys from seeking to influence a judge "by means prohibited by law." The relevant question is: What constitutes "means prohibited by law" for

purposes of this rule? Does this include only criminal acts, such as bribery? Or does "law" include rules of professional conduct applicable to attorneys and judges?

The editors' comments to § 3-503.5 of the Nebraska Rules of Professional Conduct, as well as the ABA Model Rules of Professional Conduct, state: "Many forms of improper influence upon a tribunal are proscribed by criminal law. Others are specified in the ABA Model Code of Judicial Conduct, with which an advocate should be familiar. A lawyer is required to avoid contributing to a violation of such provisions."[18] This comment appears to support a broader interpretation of the term "means prohibited by law," to include means prohibited by the Nebraska Revised Code of Judicial Conduct.

The Restatement (Third) of the Law Governing Lawyers states that "[a] lawyer may not . . . attempt to influence [a judicial] officer otherwise than by legally proper procedures,"[19] and explains in a comment that "[t]he lawyer codes impose correlative duties on lawyers to avoid knowing participation in a violation of the judicial codes."[20] This persuasive authority (although not binding as are the Rules of Professional Conduct) supports a broader understanding of the prohibition on attempting to improperly influence a judge.

Similarly, other states with rules of professional conduct based on the ABA Model Rules of Professional Conduct have read rule 3.5(a) broadly.[21] For example, the Supreme Court of Louisiana expressly rejected an argument that the "phrase 'by means prohibited by law' [in rule 3.5(a)] must be construed

---

[18] § 3-503.5, comment 1. Accord Model Rules of Prof. Conduct Rule 3.5, comment 1 (ABA 2004).

[19] Restatement (Third) of the Law Governing Lawyers § 113(2) at 191 (2000).

[20] *Id.*, comment *f.* at 193.

[21] E.g., *Louisiana State Bar Ass'n v. Harrington*, 585 So. 2d 514 (La. 1990). See, also, generally, *Mississippi Bar v. Lumumba*, 912 So. 2d 871 (Miss. 2005); *In re Disciplinary Action Against Garaas*, 652 N.W.2d 918 (N.D. 2002); *Disciplinary Action Against Wilson*, 461 N.W.2d 105 (N.D. 1990).

narrowly to include only such activities as would amount to obstruction of justice, public bribery, or other criminal acts."[22] Instead the court said, "'Conduct "prohibited by law" clearly includes violations of criminal law and presumably includes other acts that violate statutes, court rules, or other legal norms.'"[23] The court noted that the Rules of Professional Conduct and the Code of Judicial Conduct have the force of law and found that the attorney in that case violated rule 3.5(a) by attempting to induce a judge to violate the judicial canon prohibiting ex parte communications.[24]

The editors' comments to the Nebraska Rules of Professional Conduct, along with other persuasive authorities, support the conclusion that § 3-503.5(a)(1)'s prohibition on attempting to influence a judge "by means prohibited by law," includes by means prohibited by the Nebraska Revised Code of Judicial Conduct and the Nebraska Rules of Professional Conduct, and is not limited to means prohibited by criminal law.

Relevant to this case, § 5-302.4(B) of the Nebraska Revised Code of Judicial Conduct provides: "A judge shall not permit family, social, political, financial, *or other interests* or relationships to influence the judge's judicial conduct or judgment." The comment to that rule explains that "[a]n independent judiciary requires that judges decide cases according to the law and facts . . . ." (Emphasis supplied.) Section 5-302.4(A) states: "A judge shall not be swayed by public clamor or fear of criticism." Neb. Rev. Code of Judicial Conduct § 5-302.9(C) provides: "A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." And comment 4 to § 3-503.5 of the Nebraska Rules of Professional Conduct explains that "[t]he advocate's function is to present evidence and argument so that the cause may be decided according to law."

---

[22] *Louisiana State Bar Ass'n v. Harrington, supra* note 21, 585 So. 2d at 521.

[23] *Id.* at 521-22.

[24] *Id.*

Ours is a system in which judicial decisions must be made on the basis of the evidence properly before the court and the applicable law.[25] Urging a judge to make a judicial decision for reasons that go beyond the facts and law of the case may constitute a violation of an attorney's ethical obligations and may constitute an invitation for the judge to violate his or her own ethical duties. This is especially true when, as here, the communication is made in private and outside the public light of court room proceedings.

The referee perceived some tension between the broader interpretation of the term "by means prohibited by law" that the editors' comments to the rule support and the narrower interpretation the referee believed was supported by our decision in *Koenig*.[26] In *Koenig*, an attorney discipline case, Lyle J. Koenig represented a person—who was an associate in Koenig's law practice—charged with driving without a valid registration or proper proof of insurance. Koenig photographed the license plate of the county attorney, which was apparently also expired. He sent a picture of the expired license plate along with a letter and a draft "'Motion to Appoint Special Prosecutor'" to prosecute the county attorney for his expired vehicle registration.[27] In the letter, Koenig threatened to file the motion if the charges against

---

[25] See, e.g., *Matter of Boso*, 160 W. Va. 38, 45, 231 S.E.2d 715, 718 (1977) ("[c]ourts decide cases on the basis of facts and law"). See, also, generally, e.g., *McNair v. Campbell*, 307 F. Supp. 2d 1277, 1332 (M.D. Ala. 2004), *affirmed in part, and in part reversed on other grounds* 416 F.3d 1291 (11th Cir. 2005) (noting proposition that "the administration of justice should be free from extraneous control and influence, that is, factors outside the facts and law upon which a case is based"); *Reed v. State*, 232 Miss. 432, 434, 99 So. 2d 455, 456 (1958) (stating that trials "should be decided on the facts and law, [free] of improper and irrelevant influences and possible prejudices"); *State v. Hansford*, 43 W. Va. 773, 777, 28 S.E. 791, 793 (1897) (stating that "courts must decide solely upon the facts and law of the case").

[26] *State ex rel. Counsel for Dis. v. Koenig, supra* note 17.

[27] *Id.* at 205, 769 N.W.2d at 382.

Koenig's associate were not dropped and promised secrecy if they were.

We found that Koenig's actions constituted "conduct that is prejudicial to the administration of justice," in violation of § 3-508.4(d) of the Nebraska Rules of Professional Conduct. We also concluded that Koenig had violated § 3-508.4(e) by suggesting that he was able to influence a public official through unethical means.

However, we found that Koenig had not violated § 3-508.4(b), which states that it is professional misconduct for an attorney to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects," and that he had not violated § 3-503.5(a)(1). We said:

> In this case, the State of Nebraska has not brought a charge of bribery or attempted bribery against Koenig. There has been no trial or finding by any court that Koenig was guilty of any crime associated with the misconduct at issue. We decline to determine or hypothesize whether Koenig's misconduct in this case would constitute a criminal act—i.e., an act that is deemed criminal, beyond a reasonable doubt. *For similar reasons, we also conclude that there is insufficient evidence to show that Koenig violated § 3-503.5(a)* which provides that "[a] lawyer shall not: (1) seek to influence a judge, juror, prospective juror or other official by means prohibited by law." We therefore conclude that Koenig did not violate §§ 3-503.5(a)(1) and 3-508.4(b).[28]

The referee in the present case appears to have concluded that this section of our *Koenig* opinion adopted a narrow reading of the phrase "by means prohibited by law." But that section does not constitute an endorsement of an interpretation that limits the reach of § 3-503.5(a)(1) only to criminal acts. As our analysis in the *Koenig* opinion shows (and our review of the formal charges in that case confirms), the alleged

---

[28] *Id.* at 210, 769 N.W.2d at 385 (emphasis supplied).

violation of § 3-503.5(a)(1) was premised on the allegation that Koenig had engaged in attempted bribery, not that he had violated or urged the county attorney to violate the ethical duties under the Nebraska Rules of Professional Conduct. To clarify any ambiguity, we disapprove of *Koenig* to the extent that it can be read as limiting our interpretation of § 3-503.5(a)(1) to violations of criminal law alone.

We conclude that there is clear and convincing evidence that Gast violated § 3-503.5(a)(1) by attempting to influence Judge Bataillon "by means prohibited by law," that is, by means prohibited by the Nebraska Revised Code of Judicial Conduct and by the Rules of Professional Conduct, when he attempted to convince the judge to grant his motion to recuse and rule in his favor in the case for reasons outside of the evidence in the case and the applicable law, and through extra-judicial communications.

In exhibit A, the memorandum that Gast sent to Judge Bataillon and opposing counsel Craig, he urged the judge to look to the applicable law in the case but then also urged him and Craig to "examine your respective consciences in light of your Christian upbringings." He goes on to write, "I can only speculate as to your personal reasons, but I choose not to. Unfortunately, whatever those might be, they may indeed overwhelm [Diederike's] health. If that happens, how will you feel? Not good, I'm sure." By doing so, Gast urged the judge to decide the case on the basis of his client's health rather than on the evidence in the case and the applicable law.

Gast went on to write, "I only ask now that each of you carefully consider the consequences for not terminating it now, before it gets beyond the control of any of us." He then urged the judge to decide the case on the basis of "how it could impact the integrity and reputation of an otherwise respectable Judgeship."

He then said, "If it is left to the Supreme Court" to reverse on this basis, "it could be very ugly indeed for everyone. Ending it now might allow for some face-saving for all concerned, and for some well-deserved relief for [Diederike]."

Here, Gast went beyond urging the court to decide on the basis of the evidence in the case and the applicable law, but to rule in his client's favor for "some face-saving" and for the sake of his client's well-being.

In exhibit C, Gast urged Judge Bataillon to reconsider the denial of his motion to recuse. He wrote to the judge that "you should realize that you have an ever-so-brief opportunity to quietly back out of this case on a purely technical ground, *i.e.* one that is *not* related to misconduct." (Emphasis in original.) Gast then wrote, "Before you elect to pass it [sic] up this chance, I respectfully submit that you think very carefully about your own interests." By writing this, Gast urged Judge Bataillon to either "back out of this case on a purely technical ground," presumably on Gast's subject matter jurisdiction argument, and to do so in order to protect the judge's own interests, his reputation.

Within exhibits A and C, Gast urged the judge to decide the case on the basis of the judge's reputation, the judge's "Christian upbringing[]," the judge's own interests, and the health and well-being of his client. But a judge is to make judicial decisions on the basis of the facts of the case and the applicable law.

By sending exhibits A and C, Gast violated § 3-503.5(a)(1) by attempting to influence Judge Bataillon to violate the Nebraska Revised Code of Judicial Conduct by deciding the case on improper and legally irrelevant grounds. As advocates, attorneys must "zealously assert[] the client's position," but must do so "under the rules of the adversary system," including our ethical rules.[29]

We also pause to make clear that Gast's conduct violated § 3-503.5(a)(1) not only because he went beyond arguing the facts and the law of the case, but because he did so in confidential, out-of-court communications. What made Gast's conduct unethical was that he not only made arguments that

---

[29] Nebraska Rules of Professional Conduct, Preamble ¶ 2. See, also, *State ex rel. Counsel for Dis. v. Koenig, supra* note 17.

went beyond the evidence of the case and the applicable law, but that he went outside of the judicial system and made these improper arguments in private, confidential communications to the judge.

### 2. § 3-508.2(a): Making Statement With Reckless Disregard as to Its Truth or Falsity Concerning Integrity of Judge

The referee recommended that we find that there is not clear and convincing evidence that Gast violated the Nebraska Rules of Professional Conduct § 3-508.2(a) with respect to exhibit B. Specifically, the referee found that while Gast's statement that Judge Bataillon engaged in a "cover-up" was false, there is not clear and convincing evidence that Gast made the statement with reckless disregard for its truth or falsity. The Counsel for Discipline disagrees with the referee's recommended finding that Gast did not violate § 3-508.2(a). We agree with the Counsel for Discipline.

Section 3-508.2(a) of the Nebraska Rules of Professional Conduct states: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ." Comment 1 to § 3-508.2 explains that "false statements by a lawyer can unfairly undermine public confidence in the administration of justice."

While not raised by Gast, the referee cites authority that truth is an absolute defense to attorney sanctions for impugning the integrity of a judge and that the disciplinary body bears the burden of proving falsity.[30] Counsel for Discipline has proved by clear and convincing evidence that Gast's allegation that

---

[30] See S*tanding Committee v. Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995) ("[a]ttorneys who make statements impugning the integrity of a judge are, however, entitled to other First Amendment protections applicable in the defamation context. To begin with, attorneys may be sanctioned for impugning the integrity of a judge or the court only if their statements are false; truth is an absolute defense. . . . Moreover, the disciplinary body bears the burden of proving falsity").

Judge Bataillon engaged in a "cover-up" of a friendship with Craig was false.

Everyone agrees that Gast did not make a knowingly false statement. That is, he did not make a false statement that he believed to be false. By all accounts, Gast may have believed that Judge Bataillon had engaged in a "cover-up" of a friendship with Craig. The relevant question is whether, under § 3-508.2(a), Gast acted "with reckless disregard as to [the] truth or falsity" of this allegation. We conclude that there is clear and convincing evidence that he did.

Because the relevant inquiry is whether Gast made the "cover-up" statement in exhibit B with reckless disregard as to its truth or falsity, we will focus on his knowledge at that time. We determine "reckless disregard" for the truth and falsity of a statement about the qualifications or integrity of a judge under § 3-508.2(a) under an objective standard: "Did the attorney lack any objectively reasonable basis for making the statement at issue, considering its nature and the context in which the statement was made?"[31]

In exhibit B, Gast accused Judge Bataillon and Craig of engaging in a "cover-up" of their "pre-suit relationship." He wrote:

Now that the truth of your pre-suit relationship has been discovered, the Docket Sheet itself demonstrates the "cover-up" quality to each and every successive refusal to disclose it after your initial failure to do so. Check it out yourselves. It actually takes on a crescendo-like

---

[31] See *In re Dixon*, 994 N.E.2d 1129, 1137 (Ind. 2013) (interpreting identical provision under Indiana Professional Conduct Rules). See, also, *Board of Prof. Responsibility v. Davidson*, 205 P.3d 1008, 1014 (Wyo. 2009) ("[d]eterminations of recklessness under [the Wyoming Rules of Professional Conduct] are made using an objective, rather than a subjective standard. . . . This means that the attorney must have had an 'objectively reasonable' basis for making the statements. . . . In other words, the standard is whether a reasonable attorney would have made the statements, under the circumstances, not whether this particular attorney, with her subjective state of mind, would have made the statements").

appearance on its very face. The lesson about cover-ups is that they usually come undone eventually, and the consequences to those involved always amplify in direct proportion to their pre-discovery duration. This "cover-up" is more than 12 years old!

A coverup is generally defined as "[a]n attempt to prevent authorities or the public from discovering the truth about something; [especially] the concealment of wrongdoing by a conspiracy of deception, nondisclosure, and destruction of evidence," and "[a] cover-up often involves obstruction of justice."[32] It has also been defined as "a device or stratagem for masking or concealing" and "a [usually] concerted effort to keep an illegal or unethical act or situation from being made public."[33] Thus, accusing a judge of a "cover-up" of a relationship with counsel is an accusation that the judge has purposefully concealed an intentional violation of the judge's ethical obligations. No reasonable attorney would make such an accusation lightly and without a significant basis in fact.

While he has failed to file a brief with this court, Gast's answer appears to dispute the charged violation of § 3-508.2(a) on the basis that his statement that Judge Bataillon and Craig had engaged in a coverup "did not constitute a declarative statement of fact which could be deemed to be true or false[, but, rather,] constituted only a possible characterization, description or conclusion which could be derived from other facts." To the extent that this constitutes an argument that his statements are not subject to § 3-508.2(a) because they are merely expressions of opinion, not of fact, we disagree. As discussed above, the term "coverup" connotes an active concealment of improper or unethical conduct. This is not merely a subjective statement of opinion, but an allegation susceptible to an objective, factual inquiry.

At the time he sent exhibit B, Gast's only basis of knowledge upon which he may have reached his conclusion that Judge

---

[32] Black's Law Dictionary 446 (10th ed. 2014).

[33] Merriam-Webster's Collegiate Dictionary 267 (10th ed. 2001).

Bataillon had engaged in a coverup was Gast's wife's conversation with Craig's ex-wife. At the time he sent the letter, he had not followed up with any of the individuals whose names he was given to substantiate the claim that Judge Bataillon and Craig had been friends. None of the facts provided to Gast, as relayed by Gast in his testimony, show anything but a general social acquaintance between the two. They played on the same softball team and socialized with the team and the players' spouses afterward, and also attended some of the same social events. Gast's motion to recuse, filed days before he sent exhibit B, shows that he knew the two played on the same softball team for only 3 years during the 1970's or early 1980's, well over 30 years earlier. He had no evidence of a continuing relationship. Most importantly, Gast had no evidence that either Craig or Judge Bataillon had acted to intentionally cover up any past relationship.

No reasonable attorney would accuse a judge of not only violating his ethical duty to disclose potential conflicts but of covering up a relationship with counsel on the sole basis of knowledge (obtained from the counsel's ex-spouse) that the two had decades earlier been general social acquaintances. No reasonable attorney would conclude that a failure to disclose an acquaintance with counsel from over 30 years ago was due to an attempt to cover up the relationship, rather than because the fact of the acquaintance was trivial or had been forgotten. No reasonable attorney would make this accusation without first obtaining a significant factual basis to substantiate it.

But Gast did not substantiate his claim before accusing Judge Bataillon of engaging in a coverup. His letters display an almost conspiracy-theory-like obsession with his belief that Judge Bataillon was biased against him. While any attorney, as a zealous advocate, is disappointed when he or she loses an argument the attorney feels should have been won, Gast's behaviors exceed reasonable conduct. A reasonable attorney would have amassed extensive substantiating evidence before lodging such a serious accusation of bias and unethical conduct against a judge. But Gast took the unremarkable fact of a

decades-ago social acquaintance between the judge and counsel to conclude that Judge Bataillon had engaged in a coverup. We find by clear and convincing evidence that Gast made the accusation of a coverup with reckless disregard as to its truth or falsity, in violation of § 3-508.2(a) of the Nebraska Rules of Professional Conduct.

### 3. Other Provisions

Gast admitted in his answer that he had violated the other provisions he was accused of violating: § 3-508.4(a) and (d) (violating rules of professional conduct and engaging in conduct prejudicial to administration of justice). We agree with the referee that Gast has waived any objection to the charges that he violated these provisions.

### 4. Oath of Office

Gast's oath of office as an attorney under § 7-104 includes the commitment to "faithfully discharge the duties of an attorney and counselor, according to the best of [one's] ability." By violating the Nebraska Rules of Professional Conduct as discussed above, he violated his oath of office.

### 5. Sanction

[4-8] Having concluded that Gast violated the Rules of Professional Conduct and his oath of office as attorney, we must determine the appropriate sanction. To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.[34] Cumulative acts of attorney misconduct are distinguishable from isolated incidents,

---

[34] *State ex rel. Counsel for Dis. v. Tighe*, 295 Neb. 30, 886 N.W.2d 530 (2016).

therefore justifying more serious sanctions.[35] Responding to disciplinary complaints in an untimely manner and repeatedly ignoring requests for information from the Counsel for Discipline indicate a disrespect for our disciplinary jurisdiction and a lack of concern for the protection of the public, the profession, and the administration of justice.[36] In evaluating attorney discipline cases, we consider aggravating and mitigating circumstances.[37] The propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases.[38]

### (a) Mitigating Factors

One mitigating factor is the fact that Gast has no prior history of discipline in his over four decades of legal practice in this state. While his license was suspended for a time due to his failure to pay his dues and complete his continuing legal education requirements, this did not involve a violation of the Rules of Professional Conduct.

Additionally, Gast's behavior does not appear to pose a risk to his clients or the public. It does not appear that his behavior here harmed his client in any way. In fact, he seemed to be motivated by a desire to serve his client, albeit in a seriously misguided manner. Gast appears to be a competent and capable attorney.

### (b) Aggravating Factors

One of the chief aggravating factors is Gast's lack of remorse. At the hearing in this case, he stated several times that he did not regret sending the letter. He also stated, "I regret only the tone. There isn't anything in here that isn't absolutely true. There isn't anything in here that isn't absolutely appropriate . . . ."

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

Gast seems to lack any appreciation of how serious his violations were and how baseless and inappropriate his attacks on the integrity of Judge Bataillon were. What is troubling is Gast's inability to see anything wrong with his conduct. His lack of remorse is a significant aggravating factor, as is the serious nature of his infractions.

We also agree with the referee that during the hearing in this case, Gast engaged in unnecessary and inappropriate verbal attacks on the Counsel for Discipline. The Counsel for Discipline has an important job to do in our profession and has performed that job ably in this case.

## V. CONCLUSION

We conclude that the appropriate sanction is suspension from the practice of law for a period of 1 year, effective from March 3, 2017. After 1 year from the date of his suspension, Gast may apply for reinstatement. His reinstatement shall be conditioned on his being on probation for a period of 2 years. Gast is also directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012) and Neb. Ct. R. §§ 3-310(P) (rev. 2014) and 3-323(B) of the disciplinary rules within 60 days after an order imposing costs and expenses, if any, is entered by the court.

Judgment of suspension.